THE STATE OF OHIO, APPELLEE, *v.* GATES, APPELLANT.

(No. 6-82-5—Decided April 22, 1983.)

*Mr. James S. Rapp,* prosecuting attorney, for appellee.

*Messrs. Tudor, Cloud & Cesner, Mr. Robert E. Cesner, Jr.,* and *Mr. Keith A. Lange,* for appellant.

GUERNSEY, J. Defendant Andrew P. Gates was charged, tried, convicted and sentenced in the Court of Common Pleas of Hardin County for the crime of aggravated vehicular homicide in violation of R.C. 2903.06.

There was evidence that the defen-

dant and the decedent had been attending the same party at an establishment known as the Red Fox Inn which began the evening of September 18, 1981, and extended into the early morning hours of September 19, 1981; and that at approximately 1:00 a.m. they both left the party, each driving his own car, the decedent driving east thence north on S.R. 235 and the defendant driving north thence east on County Road 60 where they each approached the same intersection in their own lanes of travel. The intersection was controlled by a stop sign requiring the defendant to stop before entering. Their cars collided in the intersection only minutes after they had departed the Red Fox Inn.

Defendant and the decedent were removed to the same hospital for treatment but the decedent was found to be dead on arrival. Approximately four hours from the time of the collision defendant was requested by a law officer to submit to a blood alcohol test, to which he consented, after first speaking with an attorney by telephone. Blood samples were then removed from both the defendant and the decedent. Upon being tested defendant's sample revealed a blood alcohol content of .21 to .22 percent as well as the presence of 102 nanograms of marijuana per milliliter of blood. The defendant filed a pretrial motion to suppress this blood test evidence which, upon hearing, the trial court overruled. The trial court also did not permit the results of the test of the decedent's blood to be admitted into evidence either on the motion to suppress or on the trial of the charge.

At trial several state highway troopers testified regarding their investigation of the collision both as to the physical facts found at the scene thereof and as to their opinions of the manner in which it had happened. In combination they concluded from the physical evidence and from the various tests which they conducted that the decedent was traveling north on the preferential state highway in his own lane of travel, with headlights operating, at a legal rate of speed at the point of impact of approximately fifty-three miles per hour, and that the defendant was traveling east on the county road in his own lane of travel at a legal rate of speed at the point of impact of approximately forty-three miles per hour.

The jury found the defendant guilty of the crime charged and upon entry of his conviction and sentence he appealed setting forth five assignments of error, the first three which we will discuss and consider together and the others which we will discuss and consider separately.

"Assignment of Error No. 1:

"The trial court erred in admitting evidence of the alcohol and drug level of intoxication of the defendant under indictment for aggravated vehicular homicide for the following reasons: (1) the blood sample upon which the test was performed was obtained more than four hours after the accident; (2) a law enforcement officer obtained consent of the defendant to submit to the blood test by advising him that he was being charged with operating a motor vehicle while under the influence, and concealing the fact from defendant that the other person involved in the collision had expired and the defendant was the sole suspect in a felony investigation, i.e. aggravated vehicular homicide; and (3) that the test results were not relevant and of no probative value upon the issues in the case.

"Assignment of Error No. 2:

"The trial court erred in refusing to permit the defendant to present evidence concerning the drug and alcohol level of intoxication of the deceased at the time of the accident. This ruling was erroneous for one or all of the following reasons: (1) the prosecution had opened the door to evidence of the conduct of the deceased and the condition of his vehicle; (2) while evidence concerning the contributory negligence or fault of the deceased does not constitute a defense in a criminal

charge of aggravated vehicular homicide and the lesser included offense of vehicular homicide, such evidence is admissible as part of the *res gestae* and is relevant to the issue of proximate cause only; and (3) such evidence is further relevant, as part of the *res gestae,* to assist the jury in making a determination as to whether the conduct of defendant was reckless, as required in the offense of aggravated vehicular homicide, or culpably negligent, as required in the lesser included offense of vehicular homicide.

"Assignment of Error No. 3:

"The conviction of defendant upon a charge of aggravated vehicular homicide was against the manifest weight of the evidence, and the trial court erred in failing to direct a verdict in favor of defendant upon the charge of aggravated vehicular homicide at the conclusion of the state's case. The trial court further erred in failing to reduce the conviction of defendant from aggravated vehicular homicide to vehicular homicide upon motion of counsel for defendant after verdict."

The charge of aggravated vehicular homicide is based on the following provisions of R.C. 2903.06 in the form in which it existed at the time of the collision:

"(A) No person, while operating * * * a motor vehicle * * * shall recklessly cause the death of another."

To act "recklessly" is, as applied to this case, in turn defined by R.C. 2901.22(C) as follows:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. * * *"

Thus, it appears that a controlling element of the alleged crime is the state of mind of the defendant as to (1) the known risk, and (2) his perverse disregard of same with heedless indifference to the consequences. Because of this mental state this case must be separated analytically into two separate, yet associated, locales or events. We first consider the locale, or the event, of the collision. The only persons who could have known by personal knowledge or experience what transpired at that point were the decedent and the defendant. Being deceased the decedent could not testify thereto and the defendant, if he had any memory of same, elected not to testify. Such evidence as there was consisted of the circumstantial inferences arising from physical evidence found at the scene of the collision, the testimony of two acquaintances who discovered the collision, and the opinion evidence of the troopers. As to the decedent this evidence tended to prove that the decedent was traveling in his proper lane of travel at a legal rate of speed with his headlights operating. Similarly the evidence tended to prove that the defendant was traveling in his proper lane of travel at a legal rate of speed, and that before being removed from the scene he stated, "I didn't see it." In the defendant's case the inference could also be made that his speed at the point of impact was such that he could not have either stopped for the stop sign controlling his entrance to the intersection nor could he have, after stopping, yielded the right of way to the decedent whose lighted headlights made his approach visible to the defendant. There was no evidence to the contrary.

Considering this evidence alone there was no evidence whatever of any improper or erratic driving conduct on the part of the decedent and the evidence as to the defendant's driving conduct tended to prove, at most, only common-law negligence on his part or negligence *per se* by virtue of his statutory violations, but in no event did such evidence tend to prove, in and by itself, the defendant's mental state and that he had acted recklessly. Not tending to prove that the defendant had acted recklessly such evidence relating to the collision and scene thereof

tended only to have probative value as it related to and tended to prove causation.

Since all of the evidence relating to the occurrence of the collision tended to show that the decedent was operating his car in its proper lane of travel, with its headlights lit, and at a legal rate of speed, there is nothing to show that any alleged condition of his being under the influence of alcohol or marijuana, or both, contributed in any way to causing the collision. At worst, it would bear only on a non-issue of whether the decedent's vehicle had lost its preferential right of way by not proceeding "in a lawful manner." This is a non-issue because even had there been a loss of right of way by the decedent's vehicle so as to excuse the defendant from yielding the right of way to it, the defendant was still, without considering right of way, compelled by law to stop in obedience to the stop sign, to look for approaching vehicles on the highway and to exercise ordinary care to avoid a collision. Cf. *Smith* v. *Jones* (1960), 112 Ohio App. 195 [16 O.O.2d 123]. Thus, the fact, if so, that the decedent might have been driving his car while under the influence of alcohol or marijuana neither caused nor contributed to cause the collision and, in any event, would not absolve the defendant from any improper conduct on his part. Evidence as to decedent's blood test results was not, therefore, relevant to whether the defendant "while operating * * * a motor vehicle * * * shall recklessly cause the death of another."

At this point the second locale or event becomes pertinent and controlling in determining the defendant's mental state and his guilt, *i.e.*, what happened at the Red Fox Inn. There is evidence of probative value that he had had beer to drink while attending a party there. The test results of blood drawn some four hours after the collision, with no evidence of any consumption between the time he left the Red Fox Inn and the time of the blood withdrawal, tend to prove that at the time he left the Red Fox Inn he had such quantity of alcohol in his bloodstream, without considering the synergistic effects of marijuana, that "there would be the initial stages of a state of stupor, lack of coordination, ataxia, and a lack of sense of direction."

In these circumstances the jury could properly conclude that the defendant knew his own condition, knew also that driving his car in such condition was likely to cause him to drive in such manner as to cause a collision with another car, and with heedless indifference to these consequences, perversely disregarded such known risk and, nevertheless, drove his car from the Red Fox Inn to the point of the collision. Such conclusion is tantamount to a conclusion that the defendant operated his vehicle recklessly and, with the other evidence as to causation, thus caused the death of another.

Of course, when the disregarded risk involves a mental and/or physical condition arising from the consumption of intoxicants, the same intoxicants creating the risk may be capable at the same time of creating a state of intoxication where the knowledge of the risk and the perversity in disregarding it, required to be proved to constitute the state of acting recklessly as defined in R.C. 2901.22, cannot exist. Cf. 25 Ohio Jurisprudence 3d 170 *et seq.*, Criminal Law, Section 66. In effect, the same proof which establishes the existence of the risk may, in some circumstances, establish the absence of the knowledge thereof or of the perversity in disregarding it. The burden is upon the prosecution to establish that the defendant was acting recklessly and it is a jury question whether in proving the existence of the risk the proof fails as to the existence of knowledge and perversity. Here there was evidence of alertness of the defendant both at the scene of the collision and while at the hospital sufficient to permit the jury to conclude, with the other evidence, that the defendant knew of the risk and perversely disregarded it.

This then constituted the evidentiary

justification for the conviction. The conviction being supported by the evidence the trial court was not required to reduce it to guilt of any other offense. We conclude that the third assignment of error is without merit.

For reasons of irrelevance, as heretofore determined, we likewise find that the second assignment of error dealing with the refusal of evidence as to the drug and alcohol content of the decedent's blood is found without merit.

As to the first assignment of error, the fact that the blood sample was withdrawn more than two hours after the collision, though eliminating any presumptions arising from the test results, does not in any way diminish the probative value of the test results based on competent evidence as to their meaning properly related to the time factor involved. *State* v. *Hernandez* (1978), 62 Ohio App. 2d 63 [16 O.O.3d 114].

While the evidence would indicate that the blood sample withdrawn from defendant might otherwise be admissible within the scope of the decision of *Schmerber* v. *California* (1966), 384 U.S. 757, both as to due process and search and seizure requirements, the fact that defendant was not arrested prior to the taking of same might operate to distinguish the application of that case. Nevertheless, the evidence is conclusive that defendant consented to its withdrawal and reasonably conclusive that such consent was given by him after he had been advised of the death of the deceased and had had an opportunity to communicate with counsel. His consent was, therefore, both informed and voluntary.

The testimony of Leonard Porter, Chief Toxicologist for the state of Ohio, did not serve to weaken the probative value of the test of the sample taken more than two hours after the collision but served to strengthen its probative value as applied to the circumstances of this case. The two-hour limitation contained in R.C. 4511.19 is a general limitation applying to all arrests for a violation of that statute regardless of how long before the arrest consumption of alcohol took place and is based on scientific principles consistently applicable to the general population. On the other hand the result of the analysis of a blood sample withdrawn more than two hours after the event to which the test must relate may have probative value dependent upon the foundation of expert or opinion evidence related to the defendant and the circumstances. See Evid. R. 701 and 702. The results here of the test of the blood withdrawn from the defendant some four hours after the collision were both relevant to, and had probative value on, the issues of the case.

We find no error as assigned in the first assignment of error.

"Assignment of Error No. 4:

"The defendant is entitled to a new trial for the reason that the trial court was guilty of misconduct which presumptively had an adverse influence upon the jury and impaired cross-examination."

Under this assignment of error the defendant cites a number of examples from the record where the trial judge, of his own volition, interrupted or limited direct examination and cross-examination by the defendant or made rulings in the presence of the jury which are claimed to have reflected adversely on defense counsel's motives, and thus to have prejudiced the defendant. We find none of these claims of error which, standing alone or as isolated instances, portrays or affirmatively proves prejudice to the defendant.

We have reviewed the entire record of the trial of the case and find that it does exhibit a testiness of the trial judge as well as a willingness by the trial judge to interpose himself in some of the examination of witnesses either by way of questions or by way of limiting rulings. Such testiness as appears is exhibited mostly outside of the presence of the jury or, when in the presence of the jury, is closely

related to and in response to a tenacious propensity of defense counsel to press his theories of the case notwithstanding that the trial judge has already ruled out examination based on such theories. Thus, these examples have their origin in the action of defense counsel. The willingness of the trial judge to interject himself into the case by limiting rulings is essentially in carrying out his duty to control the trial and his questions are designed to clarify the testimony or to eliminate misunderstanding. In both events his conduct is designed essentially to achieve the purpose and end of any criminal trial, that is to learn the truth and to do justice.

We find no affirmative showing of prejudice to the defendant from the entire record, and conclude that the fourth assignment of error is without merit.

"Assignment of Error No. 5:

"The trial court erred in admitting testimony regarding the effect and degree of intoxication of the defendant, when such testimony was introduced without a proper foundation."

This assignment of error relates to the testimony of State Highway Patrol Officer Keckley who was the first to analyze the blood sample of the defendant as to its blood alcohol content and was permitted to testify as to the physiological effects of such blood alcohol on the defendant, and the testimony of Mr. Porter, hereinbefore referred to, as to the synergistic effects of blood alcohol and marijuana on the defendant.

The objection to the Keckley testimony rests primarily on the fact that he is not a physiologist but, nevertheless, that over objection he was permitted to testify that the .22 blood alcohol test result which he found in testing the defendant's blood sample taken four hours after the collision would have been a higher percentage, had the sample been taken at the time of the collision, and that his blood alcohol content adversely affected his reflexes, his physical control, coordination, depth perception and reaction time.

Under the Rules of Evidence existing at the time of trial, specifically Rules 701 and 702, Keckley was qualified by his many years of experience as a state trooper testing the blood alcohol content and observing the actions of individuals arrested for being under the influence of alcohol to give his opinion equating those actions with the .22 test result he found when testing the defendant's blood. Similarly, by reason of the same experience and the same rules he was qualified to express his opinion as to the fact that the more remote the time of withdrawing the blood sample is from the time of the event the lower the test result will be, or the inverse, i.e., that the closer such withdrawal is to the event the higher the test result will be. He was, of course, in each case, subject to cross-examination as to his opinion and the defendant was entitled to rebut his testimony. The issue, in these circumstances, becomes not one of admissibility of such evidence but as to the weight to be given to same. We find no error prejudicial to the defendant as to this aspect of Keckley's testimony.

The objection to Porter's testimony as set forth under this assignment of error is that on page 342 of the trial transcript he testified with relation to synergistic factor, "I cannot state it in any individual without testing that individual under that situation," but, nevertheless, was permitted to testify on page 236 of the transcript, "concerning the effect of the alcohol and marijuana on the Defendant, although he had never treated or tested the Defendant."

We find no such testimony on page 236 of the transcript nor have we been able to find such specific testimony elsewhere in the transcript. In any event, even were we able to find the testimony claimed to be objectionable and to find that the defendant appropriately reserved the review of same, we would have to conclude, first, that the testimony on page 342 of the trial transcript must be construed, not as being a conclusion that the witness could not testify as to any

synergistic effect on an individual without testing that individual under that situation, but merely a conclusion that the witness could not differentiate between synergistic factor levels of from .1 to .4 without testing that individual under that situation. Thus interpreted there is no conflict in the manner claimed in Porter's testimony. Secondly, even were we to accept defendant's claim of conflict, such claim goes to the weight and not to the admissibility of the evidence.

The next contention is that notwithstanding that Porter had testified at the hearing on the motion to suppress that marijuana, if smoked, would exhibit its effects and its presence in the blood stream within two or three minutes from the point of ingestion, whereas, if eaten, it may take several hours after being eaten before it would show up in the system or exhibit its effects, there was no evidence here to distinguish whether the defendant had smoked or eaten marijuana, and thus no foundation to admit marijuana test results of a blood sample taken four hours after the event when there was no proof that marijuana could have affected the defendant at the time of the event, either by itself or by its synergistic effects in the presence of blood alcohol.

In view of the fact that there was no evidence whether marijuana was ingested in the defendant's blood stream as a result of ingestion by smoking or ingestion by eating and thus no appropriate hypothesis as to this presented to Mr. Porter, his testimony is not crystal clear as to whether it had entered the defendant's blood stream at or prior to the time of the collision so as to affect his actions at that time. Nevertheless, the defendant did not object to, or seek to strike, the marijuana test results on this ground, and that issue is not reviewable.

We find the last assignment of error without merit.

Having found no error prejudicial to the defendant, appellant herein, the judgment of the trial court must be affirmed.

*Judgment affirmed.*

MILLER, P.J., and COLE, J., concur.