THE STATE OF OHIO, APPELLEE, *v.* HENNESSEE, APPELLANT.

(No. 82 X 32—Decided January 16, 1984.)

*Mr. Michael G. Spahr,* for appellee.
*Mr. Allan Sherry,* for appellant.

GREY, J. This is an appeal from the Washington County Court of Common Pleas. Appellant, David R. Hennessee, was charged with aggravated vehicular homicide, in violation of R.C. 2903.06. Appellant pleaded not guilty, but after the court overruled a motion to suppress, changed his plea to no contest. After being fully advised of his rights by the trial court, appellant entered his plea of no contest. The state read a statement into the record, to which appellant stipulated was a true account of the facts. The trial court found appellant guilty and sentenced him to serve not less than one nor more than five years in the Ohio Cor-

rectional Facility. Appellant appeals, alleging two assignments of error.

### Assignment of Error One

"It is error for the trial court to overrule a motion to suppress and/or a motion in limine relating to the results of a urine specimen, when at the hearing a proper chain of evidence is not established."

Appellant claims a proper chain of evidence was not established for the urine specimen.

At the motion to suppress and/or in limine hearing, appellant questioned whether the *taking* of the specimen had been witnessed. Appellant made no allegation the state did not properly handle or test the specimen. The record reveals appellant and his wife were in the room when the specimen was taken, but that no one actually saw appellant making the sample. This is the basis of appellant's claim of improper chain of evidence.

The admission of evidence is within the sound discretion of the trial court. See *State* v. *Moore* (1973), 47 Ohio App. 2d 181 [1 O.O.3d 267]; *State* v. *Conley* (1971), 32 Ohio App. 2d 54 [61 O.O.2d 50]. We have reviewed the record herein and find no error in the trial court's decision to admit the specimen into evidence.

While we find the trial court reached the correct result, we believe it was based on the wrong reason. The trial court stated its position at pages 1 and 2 of the transcript:

"Mr. Sherry (defendant's counsel) motions to suppress are based upon deprivation of a constitutional right."

This idea — a motion to suppress lies only where there is a constitutional violation — seems to be accepted in many jurisdictions in this state. See, for example, the opinion in *State* v. *Griggy* (1982), 1 Ohio Misc. 2d 16, where it was held that a pretrial motion to suppress can only be made on constitutional grounds. This position was also taken in a concurring opinion in *State* v. *Freilich* (June 9, 1982), Summit App. No. 10577, unreported.

We believe the Ohio Supreme Court's rulings in *State* v. *Unger* (1981), 67 Ohio St. 2d 65 [21 O.O.3d 41], and *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232 [18 O.O.3d 435], are being misapplied. In *Kettering* the court said, at page 235, after citing various cases:

"It is clear from these cases that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights."

From this rule, some courts have taken the position that a constitutional violation is the only ground for a motion to suppress, *i.e.*, that unless a constitutional violation is alleged, a pretrial motion to suppress is not proper.

This is not a proper application of *Kettering*. *Kettering* deals with the exclusionary rule. The exclusionary rule is a substantive rule of law designed to protect our constitutional rights from official encroachment. A motion to suppress is a procedural form. It is the vehicle used to invoke the exclusionary rule. But is it to be used only to invoke the exclusionary rule? We think not.

Crim. R. 12(B) states:

"(B) Pretrial motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. * * *"

The rule goes on to require certain pretrial motions, including:

"(3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Such motions shall be filed in the trial court only;"

Crim. R. 12(D) provides:

"Notice by the prosecuting attorney of the intention to use evidence.

"(1) At the discretion of the prosecuting attorney. At the arraignment or as soon thereafter as is practicable, the prosecuting attorney may give notice to the defendant of his intention to use specified evidence at trial, in order to afford the defendant an opportunity to raise

objections to such evidence prior to trial under subsection (B)(3).

"(2) At the request of the defendant. At the arraignment or as soon thereafter as is practicable the defendant may, in order to raise objections prior to trial under subsection (B)(3), request notice of the prosecuting attorney's intention to use evidence in chief at trial, which evidence the defendant is entitled to discover under Rule 16."

The whole thrust of the Criminal Rules is to have as many matters resolved at the pretrial stage as is possible. The pretrial determination of the invocation of the exclusionary rule is mandatory. Crim. R. 12(B)(3); *State* v. *Davis* (1964), 1 Ohio St. 2d 28 [30 O.O.2d 16]. Pretrial determination of non-constitutional issues would also seem to be required.

Consider these examples. The alleged common-law wife of the defendant is subpoenaed as the primary witness for the state, or the defendant claims the person administering the breathalyzer test was not properly licensed.

In both examples, a ruling on the admissibility of the evidence will substantially affect the case. If the admissibility issue is not considered at a pretrial hearing, the whole trial process will have to proceed, then stop, while the issue is considered, and if the court's ruling is adverse to the state, appeal under R.C. 2945.67 is foreclosed because jeopardy has attached.

In contrast, a motion to suppress on non-constitutional grounds filed before trial is exactly what is contemplated by the Ohio Criminal Rules and statutes. Using the same examples above, Crim. R. 16 would force the state to disclose its intent to call the common-law wife. Defendant would move to suppress under Crim. R. 12(B)(3) before trial, or be barred. After the court's ruling, the claim of error would be preserved for the defendant, while the state would, if the ruling was against them, have a pretrial right of appeal under R.C. 2945.67. In the second ex-

ample, the same orderly progression would occur, preserving and protecting the rights of both parties. As a practical matter, a ruling in either case may well be dispositive, since each side can accurately assess its trial position only after the court has ruled on the disputed evidence. The case can be concluded before a jury has to be picked, saving a lot of time.

We therefore find that the exclusionary rule is a matter of substantive law designed to protect constitutional rights. A motion to suppress is a procedural form under Crim. R. 12(B) which may be used at the pretrial stage to raise both constitutional and non-constitutional claims capable of determination without a trial of the general issue.

Assignment of Error One is therefore overruled.

### Assignment of Error Two

"For purposes of conviction under Section 2903.06(A) of the Ohio Revised Code, the State must establish, by proof beyond a reasonable doubt, some reckless conduct on the part of the defendant, beyond mere intoxication, which caused the death of another, while operating a motor vehicle."

Appellant argues that the term "reckless" in R.C. 2903.06(A) requires actual malice to support a conviction. Appellant contends this element was not proven by the state at trial.

Appellant's theory regarding his definition of "reckless" is based upon the Ohio Supreme Court's decision in *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134 [24 O.O.3d 239]. In *Chockley* the court held a defendant in a civil case could not be held liable for punitive damages, although defendant was intoxicated while driving, without other evidence of actual malice. Appellant asserts this is the standard "recklessness" must meet for a conviction under R.C. 2903.06(A). We disagree.

Under prior law, R.C. 4511.181, a conviction for aggravated vehicular

homicide was dependent upon a violation of the law regarding drunk driving, reckless operation or drag racing. None is needed under the current provision, R.C. 2903.06; therefore, the realm of violations under this section has expanded to include all reckless conduct as defined in R.C. 2901.22(C), which states:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

The record reveals appellant was driving while under the influence of alcohol, and failed to yield the right-of-way, causing the accident and the victim's death. A person is said to be "reckless," pursuant to R.C. 2901.22(C), when one ostensibly disregards a known and significant possibility that his conduct is likely to cause a certain result. Appellant has admitted to driving while under the influence. A licensed driver is charged with knowledge that driving while under the influence is against the law, and creates a substantial risk to himself and others. Appellant disregarded this risk, and continued driving until the accident occurred. We find the element of "reckless" was amply supported by the record and proven by the state. Appellant's second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE, P.J., concurs.

STEPHENSON, J., concurs in judgment only.