THE STATE OF OHIO, APPELLEE, *v.* KAVLICH, APPELLANT.

(No. 51291 — Decided December 12, 1986.)

*John T. Corrigan,* prosecuting attorney, and *H. Anthony Marolt,* for appellee.

*Gerald L. Steinberg,* for appellant.

PRYATEL, J. James Kavlich, defendant-appellant, was indicted for the following crimes: (1) two counts of aggravated vehicular homicide (of Laura Donnell and Frances Telekese) with driving under the influence of alcohol and violence specifications; and (2) driving under the influence of alcohol. (There was a *nolle prosequi* as to the driving under the influence count.)

Defense counsel filed a motion to suppress the results of a blood-alcohol test administered by defendant's treating physician on the ground that it violated the physician-patient privilege pursuant to R.C. 2317.02. The trial court overruled the motion to suppress.

Defendant pled no contest to the crimes charged. The prosecutor stated that the evidence would show that on October 19, 1984, at approximately 3:40 a.m., defendant was driving north on Warren Road. Defendant veered his car over the center line and struck an automobile head-on that was proceeding south, killing Laura Donnell, the passenger in the car, who was pronounced dead at 4:39 a.m. Frances Telekese, the driver, suffered injuries and ultimately died on November 15, 1984.[1] The coroner testified that the deaths were the result of the automobile collision.

Defendant was transported to the hospital for treatment of injuries he sustained. Defendant's physician ordered a blood analysis. The results of this test revealed that defendant's blood-alcohol content level was .152.

The court found defendant guilty as charged. Defendant filed the instant

[1] The two women were Ohio Bell employees, scheduled to work at 4:00 a.m.

appeal, raising three assignments of error.

### Assignment of Error I

"The trial court erred in denying defendant's motion to suppress all evidence relating to his blood-alcohol content in contravention of the privilege as established by Section 2317.02, Ohio Revised Code."

R.C. 2317.02 provides, in relevant part:

"The following persons shall not testify in certain respects:

"* * *

"(B) A physician concerning a communication made to him by his patient in that relation or his advice to his patient but the physician may testify by express consent of the patient * * *."

Appellant contends that pursuant to R.C. 2317.02, the court erred in allowing the results of his blood-alcohol tests to be used against him. Appellant recognizes that blood-alcohol test results were held admissible in *State* v. *Dress* (1982), 10 Ohio App. 3d 258, 10 OBR 372, 461 N.E. 2d 1312, and *State* v. *Tu* (1984), 17 Ohio App. 3d 159, 17 OBR 291, 478 N.E. 2d 830. Nevertheless, appellant argues that these decisions were made with "tortured reasoning" and should be ignored. To support his position, appellant points to several civil cases which discuss the physician-patient privilege. See, *e.g., Baker* v. *Indus. Comm.* (1939), 135 Ohio St. 491, 14 O.O. 392, 21 N.E. 2d 593; *Weis* v. *Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E. 2d 245; *In re Roberto* (1958), 106 Ohio App. 303, 7 O.O. 2d 63, 151 N.E. 2d 37.

In *Dress, supra,* at 261, 10 OBR at 375-376, 461 N.E. 2d at 1317, the court noted that an increasing number of jurisdictions are disallowing application of the physician-patient privilege in criminal prosecutions. See *State, In the Interest of M.P.C.* (1979), 165 N.J. Super. 131, 397 A. 2d 1092; *State* v.

*Erickson* (N.D. 1976), 241 N.W. 2d 854; *State* v. *District Court of Iowa* (Iowa 1974), 218 N.W. 2d 641; *State* v. *Bedel* (Iowa 1971), 193 N.W. 2d 121; *State* v. *Betts* (1963), 235 Ore. 127, 384 P. 2d .198; *State* v. *Bounds* (1953), 74 Idaho 136, 258 P. 2d 751. Cf. *State* v. *Kuljis* (1967), 70 Wash. 2d 168, 171-172, 422 P. 2d 480, 492. In holding that the court did not err in admitting the results of a blood-alcohol test in a driving while intoxicated case, the *Dress* court noted:

" '* * * The purpose of this [physician-patient] privilege is to encourage patients to make a full disclosure of their symptoms and condition to their physicians without fear that such matters will later become public. *Against the interest of the patient in having his condition remain confidential, must be balanced the interest to the public in detecting crimes in order to protect society.*' * * * [*State* v. *Antill* (1964), 174 Ohio St. 61, 64-65, 26 O.O. 2d 366, 368, 197 N.E. 2d 548, 551.]

"* * *

"We concede that the law, to a *reasonable* degree, should encourage a frank and uninhibited flow of information between doctor and patient by protecting their private, confidential communications. However, the privilege is not absolute and must yield when the public interest outweighs the policy considerations supporting the privilege. This is especially so in the context of a prosecution for the offense of driving while intoxicated. To allow the privilege to be invoked so as to exclude evidence tending to prove that appellant was driving while intoxicated would be against the public interest and would not serve the purpose of R.C. 2317.02(B). The privilege was not designed to operate in this matter, nor will we sanction such use. See *State* v. *District Court of Iowa, supra,* at 644.

"* * *

"As we noted above, R.C. 2317.02(B), being in derogation of the common law, is to be given a strict construction. *Weis* v. *Weis, supra.* In balancing the public interest in prosecuting those charged with driving while intoxicated against the patient's interest in having his confidential communication protected from disclosure and use in a court of law, we conclude that the public interest is acute and the patient's interest, under the facts of this case, is marginal at best. Consequently, the policy considerations militate in favor of the sensible and efficient administration of criminal justice. The incidental burdens imposed on the physician-patient relationship in this case are far outweighed by the substantial benefits to the public in effectively enforcing R.C. 4511.19." (Emphasis *sic.*) Dress, *supra,* at 261-262, 10 OBR at 375-377, 461 N.E. 2d at 1317-1318.

Similarly, in *Tu, supra,* where the defendant was charged with driving while intoxicated and vehicular homicide, the court held that the physician-patient privilege does not preclude the admission of blood-alcohol test results:

"Unlike the *Dress* case, appellant's intoxicated driving in this case proximately caused another person's death. Consciously inebriating oneself to the point where driving a car becomes as dangerous (and as deadly) as recklessly discharging a firearm on a public sidewalk is inexcusable conduct that cannot be tolerated. We can hardly give our tacit imprimatur to it by approving the use of an artificial evidentiary privilege that excludes probative evidence of illegality. *State* v. *Dress, supra,* at 261-262. Simply put, the privilege must yield to competent evidence of conduct the law defines as criminal. The overriding public policy favoring the sensible and effective enforcement of R.C. 4511.19 far outweighs the limited purpose of and narrow policy considerations supporting

Ohio's physician-patient privilege." *Tu, supra,* at 163, 17 OBR at 295, 478 N.E. 2d at 834.

We conclude that the public policy of sensibly enforcing R.C. 2903.06 (aggravated vehicular homicide) outweighs the narrow policy considerations offered in support of the physician-patient privilege. Appellant's first assignment of error is overruled.[2]

### Assignment of Error II

"Defendant's conviction of aggravated vehicular homicide pursuant to Section 2903.06, Ohio Revised Code, was against the manifest weight of the evidence."

Although appellant incorrectly labels this assigned error in terms of weight of the evidence, in essence, he is contending that the facts recited by the prosecutor did not establish that he committed aggravated vehicular homicide. At most, appellant contends he committed vehicular homicide.

In *State* v. *Thorpe* (1983), 9 Ohio App. 3d 1, 9 OBR 1, 457 N.E. 2d 912, paragraph two of the syllabus, this court noted that:

"The trial court has clear authority in a felony case to determine whether the facts alleged in the indictment, information, or complaint are sufficient to justify conviction of the offense charged. If an indictment alleges facts sufficient to support a conviction, the trial court's acceptance of a no contest plea requires a guilty finding. If not, the court may dismiss the charge or find the defendant guilty of a lesser included offense which is shown by those alleged facts."

See, also, *Cleveland* v. *Technisort, Inc.* (1985), 20 Ohio App. 3d 139, 20 OBR 172, 485 N.E. 2d 294, paragraph two of the syllabus.

The crime of aggravated vehicular homicide is defined in R.C. 2903.06(A) as follows:

"No person, while operating or participating in the operation of a motor vehicle, * * * shall *recklessly* cause the death of another." (Emphasis added.)

Vehicular homicide is similar to aggravated vehicular homicide except that it is couched in terms of negligence, not recklessness. R.C. 2903.07(A) reads as follows:

"No person, while operating or participating in the operation of a motor vehicle, * * * shall *negligently* cause the death of another." (Emphasis added.)

The issue presented is whether appellant acted recklessly or negligently. R.C. 2901.22 defines these culpable mental states as follows:

"(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances, when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

"(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he

---

[2] Appellant attempted to discredit *Dress, supra,* and *Tu, supra,* by factually distinguishing the *Antill* decision relied on in these cases. While there are factual differences, these decisions properly relied on *Antill* for the proposition that the benefits derived from a privilege must be weighed against the interest of the public in detecting crimes.

fails to perceive or avoid a risk that such circumstances may exist."

Appellant relies in part on *State* v. *Gates* (1983), 10 Ohio App. 3d 265, 10 OBR 379, 462 N.E. 2d 425, and *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 24 O.O. 3d 239, 436 N.E. 2d 208, to support his position.[3] In *Gates,* the defendant had a blood-alcohol content level of .21 to .22 percent and the presence of 102 nanograms of marijuana per milliliter of blood. The defendant was driving north at a legal rate of speed in his own lane of travel, with his headlights on. Defendant failed to stop at a stop sign and collided with another car, causing the driver's death. Appellant cites the following passage from *Gates* at 267, 10 OBR at 382, 462 N.E. 2d at 429:

"*Considering this evidence alone* there was no evidence whatever of any improper or erratic driving conduct on the part of the decedent and the evidence as to the defendant's driving conduct tended to prove, at most, only common-law negligence on his part or negligence *per se* by virtue of his statutory violations, but in no event did such evidence tend to prove, in and by itself, the defendant's mental state and that he had acted recklessly." (Emphasis added.)

However, appellant neglected to quote the court when it said:

"In these circumstances the jury could properly conclude that the defendant knew his own condition, knew also that driving his car in such condition was likely to cause him to drive in such manner as to cause a collision with another car, and with heedless indifference to these consequences, perversely disregarded such known risk and, nevertheless, drove his car from the Red Fox Inn to the point of the collision. Such conclusion is tantamount to a conclusion that the defendant operated his vehicle recklessly and, with the other evidence as to causation, thus caused the death of another." *Id.* at 268, 10 OBR at 383, 462 N.E. 2d at 430.

In essence, *Gates* supports the state's position, not appellant's.

Appellant cites *Chockley, supra,* for the proposition that the use of alcohol alone is insufficient proof of recklessness. However, as pointed out in *State* v. *Hennessee* (1984), 13 Ohio App. 3d 436, 438-439, 13 OBR 525, 527-528, 469 N.E. 2d 947, 950, the issue in *Chockley* concerned the award of punitive damages, not the interpretation of recklessness in the case of aggravated vehicular homicide:

"* * * In *Chockley* the court held a defendant in a civil case could not be held liable for punitive damages, although defendant was intoxicated while driving, without other evidence of actual malice. Appellant asserts this is the standard 'recklessness' must meet for a conviction under R.C. 2903.06(A). We disagree.

"Under prior law, R.C. 4511.181, a conviction for aggravated vehicular homicide was dependent upon a violation of the law regarding drunk driving, reckless operation or drag racing. None is needed under the current provision, R.C. 2903.06; therefore, the realm of violations under this section has expanded to include all reckless conduct as defined in R.C. 2901.22(C). * * *"

The *Hennessee* court then interpreted R.C. 2901.22(C) to the facts

---

[3] Appellant also relies on *State* v. *Vance* (C.P. 1983), 10 Ohio Misc. 2d 10, 10 OBR 163, 460 N.E. 2d 1175. However, a trial court decision is not controlling (*Cleveland Hts.* v. *Corrigan* [May 22, 1986], Cuyahoga App. No. 50714, unreported, at 7), nor do we consider it persuasive authority in light of the other reported appellate decisions on point.

presented and stated at 439, 13 OBR at 528, 469 N.E. 2d at 950:

"The record reveals appellant was driving while under the influence of alcohol, and failed to yield the right-of-way, causing the accident and the victim's death. A person is said to be 'reckless,' pursuant to R.C. 2901.22(C), when one ostensibly disregards a known and significant possibility that his conduct is likely to cause a certain result. Appellant has admitted to driving while under the influence. *A licensed driver is charged with knowledge that driving while under the influence is against the law, and creates a substantial risk to himself and others.* Appellant disregarded this risk, and continued driving until the accident occurred. We find the element of 'reckless' was amply supported by the record and proven by the state. * * *" (Emphasis added.)

See, also, *State* v. *Dudock* (1983), 6 Ohio App. 3d 64, 65, 6 OBR 502, 503, 453 N.E. 2d 1124, 1125.

In the case *sub judice,* the prosecutor stated that appellant (1) had a blood-alcohol content level of .152; (2) veered his car over the center line; and (3) collided head-on with another vehicle, causing the death of two women. By driving while under the influence appellant disregarded a known risk that his conduct would create substantial injury to himself and others. There were sufficient facts presented to sustain the conviction.

Appellant's second assigned error is overruled.

### Assignment of Error III

"The trial court erred in denying defendant's motion to strike the violence specification in the indictment as surplusage and inapplicable to the cause sub judice."

Appellant challenges the inclusion of two violence specifications to his indictment.

R.C. 2941.143 provides for the violence specification. It reads in pertinent part:

"Imposition of an indefinite term pursuant to division (B) * * * (7) of section 2929.11 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies * * * that, during the commission of the offense, the offender caused physical harm to any person * * *."

Appellant incorrectly speaks of the violence specification as an additional element of aggravated vehicular homicide, *viz.,* surplusage, and asserts that the violence specifications should have been deleted. In *State* v. *Jones* (Apr. 3, 1986), Cuyahoga App. No. 50362, unreported, at 4, a case involving a conviction for aggravated vehicular homicide, this court ruled that the violence specification "is not an element of the offense but rather a factor which permits the imposition of an indefinite sentence." The trial court was therefore warranted in overruling appellant's motion to strike the violence specifications as surplusage.

Appellant's third assignment of error is overruled.

*Judgment affirmed.*

PARRINO, J., concurs.

MARCUS, C.J., concurs separately.

MARKUS, C.J., concurring. While I agree that we should affirm the defendant's conviction, I reach that conclusion for significantly different reasons. In my view, the trial judge did not decide that the statutory physician-patient privilege is inapplicable here. Further, we should not review such a pretrial advisory ruling even if the trial court had made that decision. Finally, I believe that this court should not follow the Sixth District cases by allowing judicial policy preferences to override a valid legislative enactment.

Defendant's counsel moved to suppress evidence about the blood sample which the defendant's physician obtained while treating the defendant's injuries. He premised that motion on two independent theories: (a) an alleged federal constitutional violation by extracting blood, and (b) a claimed state statutory privilege for physician-patient communications. If the former reason had merit, it would justify an order to suppress that evidence. If the latter reason had apparent merit, it could justify an advisory ruling *in limine,* until the prosecutor demonstrated admissibility during the trial.

The claimed privilege would not justify a pretrial suppression order. Cf. *Columbus* v. *Sullivan* (1982), 4 Ohio App. 3d 7, 9-10, 4 OBR 27, 29-30, 446 N.E. 2d 485, 488; *State* v. *Bowen* (Mar. 31, 1983), Cuyahoga App. No. 45113, unreported. The court could not finally determine whether the statutory privilege precludes this evidence until it knew the precise circumstances for its offer during the trial. Cf. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 259, 15 OBR 379, 395-396, 473 N.E. 2d 768, 787; *State* v. *White* (1982), 6 Ohio App. 3d 1, 4-5, 6 OBR 23, 28, 451 N.E. 2d 533, 538; *Hammond* v. *Moon* (1982), 8 Ohio App. 3d 66, 70, 8 OBR 97, 102, 455 N.E. 2d 1301, 1306.

The trial court did not expressly rule whether the statutory privilege would apply here. Instead, the court denied the motion to suppress, saying:

"The court is prepared to rule on the question of blood alcohol. I find that it's perfectly proper for the doctor to draw a blood sample from Mr. Kavlich [the defendant]. I do not find a constitutional violation.

"There is a substantial difference between civil law and criminal law and simply stated, the public policy demands this answer: public policy as it relates to criminal cases."

If the court denied the motion for lack of any constitutional reason to suppress the blood evidence, the ruling was clearly proper. Cf. *Schmerber* v. *California* (1966), 384 U.S. 757. If the court denied a motion *in limine,* we should not review that ruling when the issue never arose at a trial. Cf. *Caserta* v. *Allstate Ins. Co.* (1983), 14 Ohio App. 3d 167, 170, 14 OBR 185, 188, 470 N.E. 2d 430, 434; *Krosky* v. *Ohio Edison Co.* (1984), 20 Ohio App. 3d 10, 14-15, 20 OBR 10, 15, 484 N.E. 2d 704, 709; *State* v. *White, supra.*

A plea bargain which conditions the plea on appellate review of a liminal decision may conceivably justify appellate review of that ruling. *Columbus* v. *Sullivan, supra.* Otherwise, a no contest plea precludes appellate review for the denial of a motion *in limine. Id.* There was no plea bargain here. Since a pretrial ruling *in limine* makes no final decision about admissibility, Crim. R. 12(H) does not permit its review after a no contest plea. *Id.*

However, *if* the trial court had rejected the statutory privilege and *if* we could review that ruling, I would reverse. The prosecutor relies on two Sixth District decisions that public policy favors reliable evidence in drunken driving cases and overrides the statutory physician-patient privilege. *State* v. *Dress, supra; State* v. *Tu, supra.*

Those decisions suggest that courts can decide which statutes must yield to judicially perceived public policy. However, the legislature is the final arbiter of public policy, unless its acts contravene the state or federal Constitutions. The Ohio Constitution vests the legislative power to resolve policy issues in the General Assembly. Section 1, Article II, Ohio Constitution. If courts could decide that the public policy which favors convictions in meritorious drunken driving cases overrides this statutory privilege, it could effectively repeal the statute.

Certainly, the public policy favoring convictions for even graver crimes would equally justify a decision to disregard this privilege. If the statutory physician-patient privilege is subject to judicial policy preferences, the statutory attorney-client privilege may be similarly vulnerable. If judicial policy preferences override this statute in criminal cases, there is no assurance that they cannot override it in civil cases. In other words, courts should not forget that the legislature's valid laws control policy preferences.

In my view, the Sixth District cases misread and mistakenly relied on the Supreme Court's decision in *State* v. *Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548. While that decision balances conflicting policies to deny a physician-patient privilege, it balances two legislative policies rather than legislative and judicial policy preferences. In *Antill,* the court considered conflicting statutes that preclude a physician from testifying about a patient's condition while compelling that physician to report gunshot wounds. Compare R.C. 2317.02 with former R.C. 2917.44.

The *Antill* decision concluded that the legislature intended to require disclosure and testimony about gunshot wounds, despite the otherwise applicable physician-patient privilege. It did not conclude that the physician-patient privilege is inapplicable to evidence about serious crimes. Nor did it conclude that courts can discard that statutory privilege when they feel compelled to do so. There is no legislative policy that the statutory physician-patient privilege is inapplicable in drunken driving cases, if it is otherwise applicable.

Hence, I would affirm the defendant's conviction for the reasons stated earlier, rather than the reasons provided in the majority opinion.