[Cite as *State v. Hunter*, 2013-Ohio-3459.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25164 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2009-CR-4069/2 |
| v. | : | |
| | : | |
| STEFOUN HUNTER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of August, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MELISSA REPLOGLE, Atty. Reg. #0084215, Replogle Law Office, LLC, 2312 Far Hills Avenue, #145, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.,

{¶ 1}    Defendant-appellant Stefoun D. Hunter appeals from his conviction and sentence

for Having Weapons While Under a Disability, Possession of Cocaine, Possession of Heroin, and Possession of Marijuana, along with firearm specifications. Hunter contends that the trial court erred on remand when it denied his motion to suppress evidence of firearms discovered in between the box springs and mattress of his bed during a police search of his residence. Specifically, Hunter contends that the trial court erred by taking judicial notice of the testimony of Sergeant Adkins, who testified at a suppression hearing in another proceeding involving Hunter's co-defendant, Jaytron Cooper. Hunter also contends that he received ineffective assistance of trial counsel due to his counsel's failure to object to the trial court's decision to take judicial notice of Sergeant Adkins's testimony.

{¶ 2} We conclude that the trial court erred by taking judicial notice of testimony presented at a suppression hearing in another proceeding, but that this error was harmless because virtually identical testimony was presented at Hunter's trial. We further conclude that Hunter has failed to demonstrate ineffective assistance of trial counsel. Accordingly, the judgment of the trial court is Affirmed.

## I. Course of the Proceedings

{¶ 3} This case is before us for a second time. A full recitation of the underlying facts is set forth in *State v. Hunter*, 2d Dist. Montgomery No. 24350, 2011-Ohio-6321. Some of those facts are as follows.

{¶ 4} At 6:53 p.m. on December 2, 2009, Montgomery County 911 Dispatch received a call from someone who stated he heard six gunshots and saw three black males run into 5150 Northcutt Place. Less than 20 minutes later, the 911 Dispatch received a call from Shawn Parker, who stated that his son had sent him a text message claiming that the son was being held

against his will at 5150 Northcutt Place.

{¶ 5}   Montgomery County Sheriff's Deputy Anthony Hutson was one of the officers who responded to 5150 Northcutt.   Parker explained to Dispatch that his son also told him via text message that the son could see the responding police officers outside and that the son was in a closet upstairs.   Officer Hutson looked up at the second story bathroom window and observed a male stick out his head and then close the window.

{¶ 6}   After police knocked on the door for several minutes, a male opened the door, observed the officers, and then tried to close the door.   The officers then entered the residence, secured the individuals inside, and conducted a search through the residence looking for a victim of the reported robbery or abduction.   Officers then performed a secondary search to look for the potential victim.   The secondary search involved looking in closets and under the bed for the reported victim.   Upstairs, while apparently attempting to look underneath a bed, an officer discovered firearms between the bed's mattress and box springs.   The officers also discovered drugs during the searches.

{¶ 7}   Hunter was arrested and charged by indictment with three counts of Possession of Cocaine, one count of Possession of Heroin, one count of Possession of Marijuana, and three counts of Having Weapons While Under a Disability.   The drug charges all included firearm specifications.   Hunter moved to suppress the evidence obtained from the residence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, his motion was denied.

{¶ 8}   Following a jury trial, Hunter was convicted of all charges and specifications, and was sentenced accordingly.   From his conviction and sentence, Hunter appealed to this Court.

We affirmed Hunter's convictions for Possession of Cocaine, Heroin, and Marijuana, and reversed Hunter's convictions for Having Weapons While Under a Disability and his conviction for firearm specifications. We remanded the cause to the trial court for re-determination of the suppression motion with respect to the weapons. We stated, at ¶ 40-42:

> We conclude that the evidence in the record of the suppression hearing, even when viewed in a light most favorable to the State, is too sparse to support the trial court's finding that the firearms were found under a bed. Detective Reed did testify that firearms were found in an area where a person could be hidden, but it appears that this was by report, not within his personal knowledge, and the conclusion that the firearms were found in an area where a person could be hidden does not affirmatively establish where the firearms were found. The only reasonable conclusion that we can draw from the sparse evidence at the suppression hearing was that the firearms were found between the mattress and the box springs.

> We conclude, therefore, that the trial court erred when it found that the firearms were found under a bed. We cannot determine that this error is harmless. Since we conclude that the trial court should have found, based on the evidence at the suppression hearing, that the weapons were found between the mattress and the box springs, *it remained for the trial court to find whether their discovery in that location was inadvertent. That conclusion is suggested, but not commanded, by Deputy Hutson's testimony that the firearms were found in that location "when attempting to check under a bed."*

Because we conclude that the trial court committed an error that we cannot determine to have been harmless, in its decision denying the motion to suppress the evidence of the firearms, we will reverse the convictions that depend upon that evidence, and remand this cause for further proceedings on that aspect of the suppression motion.   (Emphasis added.)

{¶ 9}    On remand, the trial court issued a "Partial Decision, Order and Entry Upon Remand; Clarification of Factual Findings on Suppression Issues."   In its decision, the trial court summarized the testimony from Hunter's trial, including the testimony of Sergeant Dan Adkins. The court also summarized and quoted the testimony of Sergeant Adkins from a suppression hearing in the proceeding involving Jaytron Cooper, Hunter's co-defendant.   The trial court then stated:

To factually clarify the record as requested by the Second District Court of Appeals, the Court finds the testimony of Sergeant Adkins at the motion to suppress hearing credible.   His testimony establishes the following facts and the Court makes the following factual findings.   During a secondary sweep, Sergeant Adkins lifted both the box springs and the mattress to look for a person under the bed.   Adkins lifted both the box springs and the mattress from the bed frame. The exact space between the floor and the bottom of the box spring is unknown, but approximated by the Court from the testimony and photographs to be between four and eight inches.   That space is sufficient to hide a person, particularly a youth.   The box springs slipped from Sergeant Adkins' grip.   Due to that inadvertent slippage, the box springs fell to the bed frame but the mattress flipped up.   At that point, Sergeant Adkins observed the Derringer, which happened from

the inadvertent slip of the box springs and the mattress flipping up. Sergeant Adkins then pulled up the mattress to observe the total of four weapons under the mattress. He then dropped the mattress, and again he lifted the box springs and mattress together to determine that no person was under the bed.

The Court does not find that the weapons were found under the bed. Rather, the Court finds that the weapons were found between the mattress and box springs. That discovery, occurred, however, as both the mattress and box springs were lifted to look under the bed and the box springs then slipped and fell. Sergeant Adkins lost his grip, inadvertently causing the mattress to separate from the box springs and revealing the Derringer. Only at that point did Sergeant Adkins intentionally pull up the mattress to observe a total of four guns which included the SKS assault rifle.

Dkt. 19, p. 5-6.

{¶ 10}    The trial court then made the following request of the parties:

The Court requests that the parties within fourteen (14) days, submit simultaneous briefs on the narrow factual scenario presented, that is, whether evidence obtained during a secondary sweep in the course of an exigent circumstances entry and search is subject to suppression when the evidence comes into plain view due to inadvertence on the part of the police officers conducting the safety sweep.

*Id.* at 6.

{¶ 11}    The parties submitted briefs as requested by the trial court. Hunter's brief

contained no objection to the trial court's decision to take judicial notice of, and rely upon, the testimony of Sergeant Adkins, which was presented at a suppression hearing in a different proceeding involving Cooper, Hunter's co-defendant.

{¶ 12} The trial court subsequently issued a decision overruling Hunter's motion to suppress. The court stated, in pertinent part:

> Clearly, the cases of the co-Defendants (Stefoun Hunter and Jaytron Cooper) have the same pertinent facts through the point in time at issue here. Co-Defendant Jaytron Cooper argued that the exigent circumstances entry, protective sweep, and plain view seizure of contraband (including the guns under the mattress) violated his constitutional rights. Those same arguments are now advanced by co-Defendant Stefoun Hunter. This trial court overruled the arguments advanced by Jaytron Cooper, and the Second District Court of Appeals affirmed that ruling in Jaytron Cooper's case. Moreover, this Court has clarified its factual findings. It has determined that the guns in the bedroom were plainly viewed through inadvertence.

> Accordingly, this Court, applying the facts, reasoning and holding of the Second District Court of Appeals in *State v. Jaytron Cooper*, C.A. Case No. 24321, to the co-Defendant's identical circumstances, and having previously clarified that the guns in the bedroom came into plain view through innocent inadvertence, reaches the same conclusion and overrules Defendant Stefoun Hunter's motion to suppress premised upon the same facts and arguments.

Dkt. 25, p. 2.

{¶ 13}   In April 2012, the trial court re-sentenced Hunter on the eight counts on which the jury had returned guilty verdicts.   From this judgment, Hunter appeals.

**II. The Trial Court Erred by Taking Judicial Notice of Testimony**

**from Another Proceeding, but This Error Is Harmless**

{¶ 14}   Hunter's First Assignment of Error states:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 15}   In our prior opinion, we directed the trial court to find whether the discovery of firearms between the bed's mattress and box springs "was inadvertent.   That conclusion is suggested, but not commanded, by Deputy Hutson's testimony that the firearms were found in that location 'when attempting to check under a bed.'" *State v. Hunter* at ¶ 41.   On remand, the trial court made no reference to Deputy Hutson's testimony.   Instead, the trial court reviewed the testimony from the suppression hearing in *State v. Jaytron Cooper*, Montgomery County Court of Common Pleas Case No. 2009-CR-4069/1.   Sergeant Adkins apparently testified at that hearing regarding the circumstances under which he discovered the firearms between the bed's mattress and box springs.

{¶ 16}   In relying upon Sergeant Adkins's testimony from another proceeding, the trial court essentially took judicial notice of the testimony from another proceeding.   However, "[t]he trial court could not take judicial notice of information [it] learned in one case and apply that information to a separate case."   *State v. Puda*, 6th Dist. Ottawa No. OT-99-028, 1999 WL 1127284, * 4 (Dec. 10, 1999).   Indeed, it is well-established in Ohio that trial courts may not

take judicial notice of their own proceedings in other cases even when the cases involve the same subject matter. (Citations omitted.) *Davis v. Haas*, 2d Dist. Montgomery No. 24506, 2011-Ohio-5201, ¶ 19. As we explained in *Davis*, at ¶ 20:

> The rationale for these holdings is that when judicial notice is taken of prior proceedings, such prior proceedings are not part of the record as defined in App.R. 9, and whether the trial court correctly interpreted such prior proceedings is not reviewable by the appellate court.

{¶ 17} The transcript from Jaytron Cooper's suppression hearing is not in the record before us. Furthermore, Cooper's suppression hearing occurred in another proceeding and Hunter did not have an opportunity to cross-examine Sergeant Adkins at that suppression hearing. Therefore, the trial court erred in taking judicial notice of Sergeant Adkins's testimony from Cooper's suppression hearing.

{¶ 18} Although the trial court erred by taking judicial notice of the testimony of Sergeant Adkins from Cooper's suppression hearing, this does not end our inquiry. When a trial court overrules a defendant's motion to suppress evidence, it has the inherent authority to reconsider its ruling at trial. At Hunter's trial, Sergeant Adkins testified as follows regarding his discovery of Hunter's firearms:

> Then I proceeded to the bed. I bent over, hooked my fingers underneath the box springs to pick the box springs and the mattress up so that I could look underneath the bed. While doing so, apparently my grip wasn't very good on the box spring, it slipped out of my hand. The mattress caught against my arm, my body; folded up.

I found a small Derringer style pistol. Upon seeing that, I picked the rest of the mattress up, found an SKS rifle, a pump shotgun and another semi-automatic pistol. Upon finding those, I put the mattress back down, picked the box spring and the mattress back up to look underneath, found no one hiding between the box spring and mattress or obviously underneath.

Tr. 708. Sergeant Adkins later testified, "When I initially dropped the box spring and the mattress caught on my arm, I saw the Derringer. So, I was like, well, let's see what else – see if there's anybody hiding or find any weapons, see what else they have." *Id.* at 712.

{¶ 19} Sergeant Adkins's trial testimony supports the trial court's decision to overrule Hunter's motion to suppress. The trial transcript is in the record before us.[1] Furthermore, the testimony of Sergeant Adkins at trial appears virtually identical to his testimony quoted by the trial court from Cooper's suppression hearing. In addition, Hunter had an opportunity at trial to cross-examine Sergeant Adkins.

{¶ 20} Although the trial court erred in taking judicial notice of Sergeant Adkins's testimony from Cooper's suppression hearing, we find that this error was harmless. Sergeant Adkins's virtually identical testimony at trial was sufficient to support the trial court's finding that the discovery of the firearms between the mattress and box springs was inadvertent.

{¶ 21} In this assignment of error, Hunter also argues that the trial court erred in overruling Hunter's motion to suppress, because the secondary search leading to the discovery of the firearms was outside the scope of the protective sweep. In our prior opinion in this matter, we found that an exigent circumstance justified a warrantless search of the residence, and

---

[1] On April 29, 2013, the State filed a "Motion to Supplement Appellate Record with Hunter's Trial Transcript Filed in CA 24350." We granted the State's motion.

remanded the matter solely to determine whether the discovery of the firearms in the location between the mattress and box sprints was inadvertent. *Hunter* at ¶ 30, 40-42. The additional argument by Hunter in this assignment of error is outside the scope of our mandate to the trial court, and is therefore not properly before us in this appeal.

{¶ 22} Hunter's First Assignment of Error is overruled.

### III. Hunter Has Not Demonstrated Ineffective Assistance of Trial Counsel

{¶ 23} Hunter's Second Assignment of Error states:

APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S USE OF EVIDENCE NOT PRESENTED AT HUNTER'S MOTION TO SUPPRESS HEARING.

{¶ 24} A claim of ineffective assistance of trial counsel requires both a showing that trial counsel's representation fell below an objective standard of reasonableness, and that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong requires a finding that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, with a reasonable probability being "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 25} Hunter contends that his trial counsel was ineffective when he failed to object to the trial court's use of evidence from Jaytron Cooper's suppression hearing to overrule Hunter's

motion to suppress. However, as noted in Part II, above, the trial court's error in taking judicial notice of testimony from Cooper's suppression hearing is harmless error because Sergeant Adkins's trial testimony established that the discovery of the firearms was inadvertent. Therefore, Hunter cannot establish that there is a reasonably probability that the result of the proceeding would have been different if his counsel had objected to the trial court's use of the testimony from Cooper's suppression hearing..

{¶ 26} Hunter's Second Assignment of Error is overruled.

## IV. Conclusion

{¶ 27} Both of Hunter's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., dissenting:

{¶ 28} I dissent. A trial court cannot set up a "deferred ruling" on a motion to suppress, based upon trial testimony after the fact. Furthermore, upon remand, the trial court should not have relied upon testimony from a co-defendant's separate and distinct pretrial motion to suppress, wherein Hunter had no ability to cross-examine the key witness to the Fourth Amendment issue.

{¶ 29} Any examination, later at trial, was focused on the question of guilt, not police conduct under Crim.R. 12(B)(3). "The pretrial determination of the invocation of the exclusionary rule is mandatory. Crim.R. 12(B)(3); *State v. Davis*, 1 Ohio St.2d 28, 203 N.E.2d

357 (1964)." *State v. Hennessee*, 13 Ohio App.3d 436, 438, 469 N.E.2d 947 (4th Dist.1984).

**{¶ 30}** Furthermore, at paragraph 18, the majority suggests that, "When a trial court overrules a defendant's motion to suppress evidence, it has the inherent authority to reconsider its ruling at trial." If this were true, such reconsideration and the granting of a motion to suppress at trial would deprive the State of the right to appeal an adverse ruling by placing the defendant twice in jeopardy.

**{¶ 31}** I would reverse.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Melissa Replogle
Hon. Mary L. Wiseman