THE STATE OF OHIO, APPELLEE, *v.* GRAY, APPELLANT.

(No. C-830402—Decided March 7, 1984.)

*Mr. Arthur M. Ney, Jr.,* prosecuting attorney, and *Ms. Janna H. Flessa,* for appellee.

*Mr. William B. Church III,* for appellant.

BLACK, J. After defendant's motion to suppress his confession was denied at a pretrial hearing, he was found guilty by a jury of two counts of breaking and entering in violation of R.C. 2911.13. In his single assignment of error, defendant asserts that the trial court erred in overruling the motion to suppress. The determinative issues are: (1) whether in a suppression hearing in which the defendant presents some credible evidence that his confession was not voluntary,[1] the state has any burden of going forward to counter defendant's evidence or can rely on the existence of patent weaknesses in the defendant's evidence; and (2) whether in the absence of any contradictory or rebuttal evidence, the court can weigh[2] the evidence, reject defendant's evidence in its entirety, and overrule the motion to suppress. We hold that under the circumstances disclosed in the record, the state failed to carry its burden and the court erred in overruling the motion. The assignment of error has merit. A detailed review of the record will be necessary to explain our reasons.

At the suppression hearing, defendant presented two witnesses in addition to himself: Harvey Fedele (a co-defendant), and Freida Burton (defendant's girlfriend). Fedele testified that he overheard the police officers interrogating the defendant in the adjoining room at police headquarters because the connecting door was open, and that the officers gave the defendant five minutes to confess to two break-ins or they would "nail him to the wall" for at least four years and charge Burton, his girlfriend, with being an accessory to nine break-ins. Fedele stated that Burton was in the same room with him when he

---

[1] The test for determining whether a confession is voluntary or involuntary is set forth in the second paragraph of the syllabus of *State v. Edwards* (1976), 49 Ohio St. 2d 31 [3 O.O.3d 18]:

"2. In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."

[2] The words "weigh" and "weight" refer to the ultimate decision by the court about the credibility of the witnesses; that is, what testimony the court decides to believe or disbelieve. Preliminary to making that decision, the court may have to evaluate the testimony to determine whether the evidence can be "credited" or is "credible evidence," an evaluation discussed in detail *infra.*

overheard this exchange. He conceded that he had implicated the defendant in nine break-ins in earlier statements to the police, but he claimed on the stand that this was a lie.

Burton contradicted Fedele by stating that the connecting door was closed and locked when she was in the room with him, and that she did not overhear any interrogation of the defendant or any police promises of reduced charges or her release in exchange for a confession. She said, however, that when she was taken to the room where the defendant was being interrogated, "[h]e [the defendant] said the police officer said if he would go ahead and plead [*sic*] they would let you [Burton] go." She was then released without being charged.

The defendant testified that promptly after he was arrested and brought to the interrogation room, he was given five minutes to confess to any two of nine break-ins (with which he said he had nothing to do), or both he and his girlfriend would be "nailed" with all nine break-ins. He made the taped statement only to make sure Burton would not have to go to prison. He said that he signed the *Miranda* waiver *after* he gave the taped statement, but this conflicted with the time notations on the written waiver and the opening remarks of the interrogating officer in the taped statement, both of which indicated that *before* the statement was taped, he had read, understood and signed the waiver.

The state offered no evidence of any nature at the conclusion of the defendant's evidence, but now relies on contradictions in the defendant's evidence, particularly the fact that the signed waiver contains a clear assertion that "[n]o promises or threats * * * pressure or coercion of any kind" had been used against defendant.

Defendant's evidence could never be characterized as pristine. There are obvious contradictions in it, and the ultimate credibility of all three witnesses was suspect.[3] Nevertheless, setting aside for the moment the weight to be given this testimony, it was "credible evidence" because it was relevant to the issues and was neither so internally inconsistent, nor so utterly beyond the scope of human experience, nor so physically impossible, that it could not reasonably be given credit by rational minds but had to be rejected in its totality as a matter of law. Since it could not be rejected it was entitled to consideration for the purpose of determining whether the defendant had presented sufficient evidence to support his burden of proof.

The defendant had the burden of ultimate persuasion to prove (by a preponderance of the evidence) his claim that his taped statement must be suppressed because it was compelled (in this instance, by hope of reward), and therefore involuntary. *State* v. *Kassow* (1971), 28 Ohio St. 2d 141 [57 O.O.2d 390], paragraph three of the syllabus.[4] The defen-

---

[3] The defendant was on probation to this same trial judge on an undisclosed prior conviction. Burton had "done some time" for trafficking in drugs and was on probation. Fedele had a prior record and had already been sentenced under the instant indictment at the time of the suppression hearing. In defendant's confession, he stated that Fedele was with him when he committed the two break-ins of which he was convicted, but Fedele was not charged with either of these in the indictment; this suggests that Fedele

made a bargain or deal with the police in exchange for implicating the defendant.

[4] We believe that this rule remains authoritative even though the United States Supreme Court stated in *Lego* v. *Twomey* (1972), 404 U.S. 477, 489, that "the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." We believe the court was addressing the quantum of proof (preponderance of the evidence rather than beyond a reasonable

dant carried that burden initially by presenting sufficient "credible evidence" to raise the issue (sometimes called a prima facie case). His evidence might not be sufficient, upon a weighing of all the evidence, to carry the ultimate burden of persuading the court of the truth and validity of his claim, but it was sufficient, using the "rational minds" test, to raise the issue. All three witnesses had testified that the police promised both Burton's release and reduced charges against defendant in exchange for his confession to crimes he claimed he did not commit.[5] If this evidence was to be believed, the involuntariness infected the waiver of *Miranda* rights as well as the confession.

This was the crucial moment in the suppression hearing. We hold that the court could not at that moment weigh the evidence and had to give credit to the defendant's evidence on the "rational minds" basis. The state, therefore, had the burden of going forward with evidence sufficient to meet (if not to overcome) the defendant's evidence. It could not rely on patent weaknesses in the defendant's evidence, because the evidence was not beyond all rational acceptance. Generally, the state presents rebuttal evidence, as is illustrated by *State* v. *Melchior* (1978), 56 Ohio St. 2d 15, 23 [10 O.O.3d 8] *et seq.,* but in this case, the state offered nothing. This was a fatal mistake because the issue had

been duly presented to the court (a prima facie case had been made).

We hold that in the absence of any contradictory or rebuttal evidence of any nature whatsoever, the court could not weigh the evidence, and because of the failure of the state to go forward with such evidence, had no choice but to credit defendant's evidence. If the court had before it "credible evidence" from the state disproving the defendant's "credible evidence," then the court could have weighed the evidence and decided which evidence to believe. It would have been entitled to disbelieve all defendant's witnesses on all relevant points. But in the absence of any countervailing evidence whatsoever, it could not do so. The court erred when it rejected all defendant's evidence and overruled the motion to suppress.

We are aware that in a civil action tried without a jury, the court is allowed to weigh plaintiff's evidence at the close of his case and decide that the plaintiff is not entitled to relief, without hearing any contradictory or rebuttal evidence.[6] But that applies only to civil actions, and we find no similar provision in criminal procedure.

We believe that in a suppression hearing on the involuntariness of a confession under criminal charges, when the accused's life or liberty is at stake and the right against self-incrimination as guaranteed by the Fifth Amendment is in issue, no short cuts should be used

---

doubt) and not the specific procedure that must be used in a pretrial suppression hearing.

[5] At the conclusion of the suppression hearing, the court said it did not believe either the defendant or Fedele but it did believe Burton. Contrary to the court's statement that nothing in her testimony supported the motion to suppress, she had testified that when she saw the defendant in the interrogation room prior to her being released, defendant reported to her that the

police had agreed to let her go if defendant "pleaded" (confessed).

[6] Under Civ. R. 41(B)(2), the court as sole factfinder may make all factual and legal determinations at the close of plaintiff's case and render judgment against plaintiff. *Janell, Inc.* v. *Woods* (1980), 70 Ohio App. 2d 216 [24 O.O.3d 266]; *Altimari* v. *Campbell* (1978), 56 Ohio App. 2d 253 [10 O.O.3d 268]; *Jacobs* v. *Bd. of County Commrs.* (1971), 27 Ohio App. 2d 63 [56 O.O.2d 245]; *Jones* v. *Doole* (Aug. 2, 1978), Hamilton App. No. 77357, unreported.

and the full basis on which the court reaches its decision should be spread on the record so as to be apparent to all. This ruling does not presume the existence of coercion by the police, it does not extend an accused's rights beyond their current scope, and it does not place an undue burden on the prosecution.

We reverse the judgment below and remand this case with instructions to grant defendant's motion to suppress and then to proceed in accordance with law.

*Judgment reversed and cause remanded.*

PALMER, P.J., and DOAN, J., concur.