OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State of Ohio, Appellant, v. Witwer, Appellee.

[Cite as State v. Witwer (1992),     Ohio St.3d     .]

Criminal procedure -- Penalties and sentencing -- Court of common pleas may impose indefinite term of incarceration prescribed by R.C. 2929.11(B)(7), when.

A court of common pleas may impose the indefinite term of incarceration prescribed by R.C. 2929.11(B)(7) where an accused has been convicted of a fourth degree felony the commission of which caused physical harm to any person, provided the indictment which initiated the criminal proceeding contains the specification contained in R.C. 2941.143 and the accused was convicted thereon.

(No. 91-1052 -- Submitted July 8, 1992 -- Decided August 19, 1992.)

Certified by the Court of Appeals for Licking County, No. CA-3587.

At approximately 2:00 p.m. on March 20, 1989, defendant-appellee, John Witwer, departed from his home in Lexington, Ohio, operating a 1988 Dodge Dakota pickup truck. Appellee was accompanied by his wife and daughter, who were passengers in the vehicle. Their destination was Lithopolis, Ohio, where they planned to visit Mrs. Witwer's parents. Under usual circumstances, appellee would have travelled Interstate Route 71 as far as Columbus, but because road repairs were underway on that stretch of highway, appellee chose to proceed from Lexington through Mount Vernon on Ohio Route 13 to Ohio Route 661 southbound. Ohio Route 661 southbound terminates in Granville, Ohio. (See Appendix.) [* The Appendix is a map and is not available through electronic transmission *].

At approximately 1:30 p.m. on May 20, 1989, Rebecca Roberts was engaged in her employment as a waitress for the Alladin Restaurant in Granville when she was visited by her daughter, Gail Durham, and Gail's friend, Joan Howard, who had travelled from Columbus to Granville to visit Mrs. Roberts. At 2:30 p.m., Mrs. Roberts completed her work schedule and decided to accompany Durham and Howard on visits to garage sales held around the Granville area. Thereafter, they returned to the restaurant, where Mrs. Roberts retrieved her automobile and followed the Chevrolet Cavalier driven by Durham toward the

home of Mr. and Mrs. Roberts. The route to the Roberts residence involved a left turn from College Street to Route 661 northbound.

Route 661 southbound immediately north of Granville is a two-lane road traversing rolling terrain in Licking County. The road ascends from where it is intersected by Dry Creek Road from the east to a high point at Cambria Mill Road, which also intersects Route 661 from the east. South of Dry Creek Road, Route 661 southbound descends from Cambria Mill Road toward the village of Granville. (See Appendix.) A passing zone extends from Dry Creek Road southbound on Route 661 for approximately one-tenth of a mile. Thereafter, for the succeeding four miles, Route 661 southbound is a no-passing zone. For at least one-quarter of a mile north of Dry Creek Road, Route 661 southbound is also a no-passing zone.

At approximately 4:00 p.m. on May 20, 1989, Maxine Hull was driving her automobile southbound on Route 661. Her husband and two granddaughters were passengers in the vehicle. During this time she was following a truck which was pulling a horse trailer. The truck was operated by Theodore Current. As she proceeded along Route 661, Mrs. Hull noticed that the blue pickup truck driven by appellee had passed a gray automobile travelling behind her despite the fact that a double yellow line on the pavement indicated that the area was a no-passing zone. Thereafter, the pickup truck passed the Hull vehicle in the no-passing zone and pulled between it and the horse trailer.

Immediately after entering the right lane, appellee reemerged into the left lane to pass the horse trailer as both vehicles approached Dry Creek Road. Stopped at the intersection at Route 661 on Dry Creek Road was a vehicle operated by Lori Kinman. While the pickup truck operated by appellee and the horse trailer operated by Current occupied both lanes of Route 661, Kinman made a left turn from Dry Creek Road to southbound Route 661 approximately one-quarter of a mile south of the approaching vehicles. After Kinman's entry onto Route 661 southbound, appellee briefly pulled behind the Kinman vehicle. Thereafter, appellee pulled out across a double yellow line into the left lane and collided head-on with the Cavalier operated by Durham in the northbound lane of Route 661. Although appellee applied his brakes prior to impact, his speed at that time was estimated to be between fifty-seven and sixty-two miles per hour. As a result of the collision, Durham suffered severe trauma to her heart and brain, resulting in her death.

On October 13, 1989, appellee was indicted by the Licking County Grand Jury on one count of aggravated vehicular homicide in violation of R.C. 2903.06. The indictment further included, pursuant to R.C. 2941.143, a specification that, during the commission of the offense, appellee caused physical harm to Gail Durham. A jury trial commenced in the Licking County Common Pleas Court on July 19, 1990. Following trial, the jury returned a verdict of guilty on the underlying offense of aggravated vehicular homicide. Thereafter, the trial court found appellee guilty on the specification. Appellee was subsequently sentenced to a term of incarceration of two and one-half to five years.

Upon appeal, the court of appeals reversed the trial court

-- concluding that, inasmuch as the specification was subsumed within the underlying offense, a conviction predicated thereon constituted a violation of due process of law.  Finding its decision to be in conflict with the decisions of the Court of Appeals for Cuyahoga County in State v. Kavlich (1986), 33 Ohio App.3d 240, 515 N.E.2d 652, and State v. Runnels (1989), 56 Ohio App.3d 120, 565 N.E.2d 610, the appellate court certified the record of the case to this court for review and final determination.

Robert L. Becker, Prosecuting Attorney, and Kenneth W. Oswalt, for appellant.
John W. Witwer, pro se.

Sweeney, J.   Appellee herein was convicted of a violation of R.C. 2903.06.  At the time of the offense, this section provided in relevant part:
"(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another.
"(B) Whoever violates this section is guilty of aggravated vehicular homicide, a felony of the fourth degree.[1]  If the offender has previously been convicted of an offense under this section or section 2903.07 of the Revised Code, aggravated vehicular homicide is a felony of the third degree."  (Footnote added.)
The penalties for commission of a fourth degree felony are set forth in R.C. 2929.11.  R.C. 2929.11(D) provides as follows:
"(D) Whoever is convicted of or pleads guilty to a felony of the third or fourth degree and did not, during the commission of that offense, cause physical harm to any person or make an actual threat of physical harm to any person with a deadly weapon, as defined in section 2923.11 of the Revised Code, and who has not previously been convicted of an offense of violence shall be imprisoned for a definite term, and, in addition, may be fined or required to make restitution.  The restitution shall be fixed by the court as provided in this section.  If a person is convicted of or pleads guilty to committing, attempting to commit, or complicity in committing a violation of section 2909.03 of the Revised Code that is a felony of the third or fourth degree and is sentenced pursuant to this division, he shall be required to reimburse agencies for their investigation or prosecution costs in accordance with section 2929.28 of the Revised Code.
"The terms of imprisonment shall be imposed as follows:
"(1) For a felony of the third degree, the term shall be one, one and one-half, or two years;
"(2) For a felony of the fourth degree, the term shall be six months, one year, or eighteen months."  (Emphasis added.)
Thus, R.C. 2929.11(D), as relevant here,[2]  provides that one convicted of a fourth degree felony during which he does not "cause physical harm to any person" is to be sentenced to the definite term of incarceration set forth in subsection (D)(2) thereof.  R.C. 2929.11(D) therefore implicitly provides that the commission of a fourth degree felony which does "cause physical harm" will subject a convicted defendant to the

indefinite term of incarceration provided in R.C. 2929.11(B)(7). This interpretation of R.C. 2929.11(D) is underscored by reference to R.C. 2929.11(B)(7), which provided:

"(B) Except as provided in division (D) of this section, section 2929.71, and Chapter 2925. of the Revised Code, terms of imprisonment for felony shall be imposed as follows:

"***

"(7) For a felony of the fourth degree, the minimum term shall be eighteen months, two years, thirty months, or three years, and the maximum term shall be five years." (Emphasis added.)

Accordingly, where an accused commits a fourth degree felony causing physical harm he is eligible to be sentenced pursuant to R.C. 2929.11(B)(7). However, R.C. 2941.143, as relevant here, prescribes that, before one may be sentenced to the term of incarceration provided in R.C. 2929.11(B)(7), the indictment must have contained a specification stating that the accused caused physical harm in the course of committing a fourth decree felony. In this regard R.C. 2941.143 provides:

"Imposition of an indefinite term pursuant to division (B)(6) or (7) of section 2929.11 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies either that, during the commission of the offense, the offender caused physical harm to any person or made an actual threat of physical harm to any person with a deadly weapon, as defined in section 2923.11 of the Revised Code, or that the offender has previously been convicted of or pleaded guilty to an offense of violence. Such a specification shall be stated at the end of the body of the indictment, count, or information and shall be in substantially the following form:

"'Specification (or, Specification to the First Count). The grand jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth the allegation either that, during the commission of the offense, the offender caused physical harm to any person, or made an actual threat of physical harm to any person with a deadly weapon, or that the offender has previously been convicted of or pleaded guilty to an offense of violence).'" (Emphasis added.)

Accordingly, an accused may be sentenced to the indefinite term of incarceration provided by R.C. 2929.11(B)(7) only where he has been convicted pursuant to an indictment which charges him with a fourth degree felony the commission of which caused physical harm to a person and which also includes a specification that the accused caused physical harm to a person while committing the underlying felony.3 Conversely, where an accused is indicted, tried and convicted of a fourth degree felony the commission of which did not cause physical harm to a person or where an accused is indicted, tried and convicted of a fourth degree felony the commission of which did cause physical harm to a person but where the indictment did not include the specification contained in R.C. 2941.143 or the jury refused to convict thereon, the accused is to be sentenced to the definite term of incarceration prescribed in R.C. 2929.11(D)(2).

Thus, a conviction on the specification contained in R.C.

2941.143 compels a trial court to impose an indefinite term of incarceration provided in R.C. 2929.11(B)(7) instead of a definite term of incarceration provided in R.C. 2929.11(D)(2). Therefore, R.C. 2941.143 merely directs the selection of a sentencing scheme for the underlying felony which differs from that which would otherwise have been imposed.4

Accordingly, we conclude that a court of common pleas may impose the indefinite term of incarceration prescribed by R.C. 2929.11(B)(7) where an accused has been convicted of a fourth degree felony the commission of which caused physical harm to any person, provided the indictment which initiated the criminal proceeding contains the specification contained in R.C. 2941.143 and the accused is convicted thereon.

After his conviction on the underlying felony, appellee was convicted of the specification by the trial court. The parties had previously stipulated that the guilt determination on the specification would be made by the court rather than the jury.

Appellee was thereafter sentenced to a term of incarceration of from two and one-half to five years. On August 21, 1990, a journal entry was filed by the common pleas court, which reflected that appellee had been sentenced to a term of two and one-half to five years for violation of R.C. 2903.06. Nevertheless, in his brief to the court of appeals, appellee set forth the following assignment of error:

"Assignment of Error No. Four: The indeterminate sentence imposed by the trial court subjected appellant to double jeopardy contrary to the United States Constitution and the Constitution of Ohio."

His brief explained the assignment of error as follows:

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution prohibits cumulative punishments for the same offense. Brown v. Ohio (1977), 432 U.S 161. It is clear that the trial court imposed two punishments upon Appellant for one offense." (Emphasis added.)

The court of appeals entertained the appeal on this basis and, while rejecting the double jeopardy argument, concluded that the imposition of the penalty under R.C. 2941.143 constituted a denial of liberty to appellee without due process of law. In this regard, the appellate court stated:

"Obviously cognizant of our decision in [State v.] Patton (Feb. 11, 1991), Stark App. No. CA-8236, unreported, cited supra, this court holds that it is redundant and unwarranted to include the physical harm specification in the offense of aggravated vehicular homicide, notwithstanding whether there were injuries caused from the event which subsequently caused death (as in Kavlich and Runnels) or whether death was immediate as in the case sub judice.

"Death being the ultimate physical harm any offender can cause, we believe that 'tacking on' the physical harm specification (at the discretion of the prosecution) is improper, inconsistent, and violative of due process. We conclude that the crime itself for aggravated vehicular homicide subsumes the physical harm specification.

"Appellant's third assignment of error is sustained. See our disposition of this cause as to certification infra and in

the judgment entry."  (Emphasis added.)

The case was thereafter certified to this court as being in conflict with the decisions of the Eighth District Court of Appeals in State v. Kavlich (1986), 33 Ohio App.3d 240, 515 N.E.2d 652, and State v. Runnels (1984), 56 Ohio App.3d 100, 565 N.E.2d 610.

Appellee has appeared pro se before this court.  The substance of the arguments made for both parties to this court is that R.C. 2941.143 authorizes imposition of a sentence in addition to that imposed for a felony of the fourth degree where the specification is in the indictment and the accused is convicted thereon.  The difference in the positions of the parties concerns whether such a practice is constitutional.

We decline to resolve the present controversy on this basis.  As reflected by the record, appellee was sentenced to an indefinite term of incarceration of from two and one-half to five years on the underlying felony.  No separate penalty has been imposed for the specification.  Unlike R.C. 2929.71, R.C. 2929.11(B) does not provide for the imposition of an additional sentence.  R.C. 2941.143 merely sets forth the procedure which must be followed in order to sentence one convicted of a fourth degree felony to the indefinite term of incarceration imposed by R.C. 2929.11(B)(7), as R.C. 2941.141 does for the additional term prescribed by R.C. 2929.71.  Moreover, the sentence imposed upon appellee does not constitute an enhancement of a penalty he would have otherwise received for commission of the same act.  Rather, the sentence is dependent upon the nature of the felony which he committed and compliance with the procedural requisites of R.C. 2929.11 and R.C. 2941.143.

In order for the penalty to be imposed, the indictment must include the specification as well as a count referring to the underlying felony.  Inclusion of the specification in the indictment accomplishes a twofold purpose.  It alerts an accused that the fourth degree felony of which he has been charged constitutes a felony the commission of which caused physical harm to a person.  The specification further apprises the accused that commission of the underlying felony subjects him to the indefinite term of incarceration prescribed by R.C. 2929.11(B)(7).  Furthermore, appellee may be sentenced to the indefinite term of incarceration provided in R.C. 2929.11(B)(7) only where he has been convicted of a fourth degree felony the commission of which would cause physical harm to a person (e.g., R.C. 2903.06) and has been further convicted of a specification which charged that he did, in fact, cause physical harm to a person in the commission of the fourth degree felony.

While appellee challenges this procedure on a constitutional basis, a close analysis of the provisions of R.C. 2929.11 and R.C. 2941.143 reveals no constitutional defect.  It can hardly be disputed that it is well within the province of the Ohio General Assembly to impose a more severe sentence for felonies of the fourth degree which cause physical harm (R.C. 2929.11[B][7]) than for felonies of the fourth degree which do not cause physical harm (R.C. 2929.11[D][2]).  However, the General Assembly further provided, pursuant to R.C. 2941.143, that a person subject to the indefinite term of incarceration prescribed by R.C. 2929.11(B)(7) must be apprised

of that fact by a specification contained in the indictment and must be convicted of that specification. In this regard, R.C. 2941.143, rather than constituting a violation of due process of law or double jeopardy, provides additional procedural safeguards which are purely statutory in nature. The fact that a failure on the part of the state to include the specification in the indictment or to obtain a conviction thereon will result in the imposition of a definite sentence pursuant to R.C. 2929.11(D)(2) does not render compliance with such procedural requirements an enhancement of a sentence which an accused would otherwise receive. What subjects the accused to the more severe sentence is the nature of the felony which has been committed, not the specification. The specification merely provides notice to the accused of this fact. It is for this reason that the General Assembly has mandated the inclusion of the specification in the indictment.

The determination below that imposition of the indefinite term of incarceration constituted separate punishment depriving appellee of his liberty without due process of law is unsupported by the law or the record of the trial court proceedings imposing sentence. Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for reimposition and execution of the original sentence.

Judgment reversed<br>and cause remanded.

Moyer, C.J., Douglas, Wright and Resnick, JJ., concur.

Holmes and H. Brown, JJ., dissent.

FOOTNOTES:

1 The subsequent amendment of R.C. 2903.06(B) has elevated this offense to a felony of the third degree.

2 Our discussion herein is limited to the circumstances presented by the instant cause which authorize the imposition of the indefinite term of incarceration provided by R.C. 2929.11(B)(7) (i.e., commission of a fourth degree felony which causes physical harm). In the interests of clarity, we have omitted reference to the alternate circumstances under which imposition of the indefinite term is permitted [e.g., the actual threat of physical harm with a deadly weapon).

3 While this requirement may appear, on first impression, to involve a redundancy, it is clearly intended to apprise a criminal defendant of the charges against which he must defend and the potential penalty he faces upon conviction. Likewise, requiring a separate jury specification assures that, in the unlikely event that the defendant is charged with the commission of a fourth degree felony which does not involve physical harm and a specification to the contrary is contained in the indictment, the specification can be stricken by the trial court or a jury verdict thereon which is unsupported by any evidence of physical harm can be set aside.

4 In this regard, the specification to which R.C. 2941.143 relates differs from the specification contained in R.C. 2941.141. Unlike the latter specification, the former specification does not authorize the imposition of a term of incarceration in addition to that imposed for the underlying felony. R.C. 2929.71 provides that persons who have a firearm while committing a felony are subject to three years' actual

incarceration in addition to the term of incarceration for the underlying felony.  R.C. 2941.141 accomplishes this purpose by referring to R.C. 2929.71, which prescribes the three-year additional sentence.  In contrast, R.C. 2941.143 does not prescribe a term of incarceration in addition to the term on the underlying felony, but permits an indefinite term of incarceration to be imposed on the underlying felony where the defendant has been indicted, tried and convicted of the specification.  R.C. 2941.143 accomplishes this purpose by referring to R.C. 2929.11(B)(7).  Thus, conviction on the specification under R.C. 2941.143 permits the imposition of a greater but not additional term of incarceration.

However, as is the case with all specifications, the specification in R.C. 2941.143 (as well as in R.C. 2941.141) must be included in the indictment and the defendant must be convicted thereon in order for the particular consequences arising therefrom to transpire.

Holmes, J., dissenting.  I must dissent from the majority opinion because I do not believe that the conclusions reached comport with the legislative intent of the statute construed.

R.C. 2941.143 is intended by the General Assembly to enhance the penalty of felonies of the third and fourth degree in which the offender, while committing the underlying violent offense, also injures or threatens to injure any person with a deadly weapon.  This point was emphasized in the state's brief as follows: "*** it should be assumed that the legislature enacted Revised Code 2941.143 for its obvious purpose: to punish those offenders who commit what are necessarily violent offenses at least as severe[ly] if not more severe[ly] than other non-violent offenders.  Any other interpretation of Revised Code 2941.143 renders it all but ineffective in accomplishing the clear legislative intent behind it."  The offense of aggravated vehicular homicide is not an "offense of violence" as the term is defined within the Criminal Code of Ohio.  Under the definition section of R.C. Chapter 29, at R.C. 2901.01(I), "offense of violence" means any of the following:

"(1) ***5

"***

"(3) An offense, other than a traffic offense, under an existing or former municipal ordinance or law of this or any other state of the United States, committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons[.]"  (Footnote added.)

The crimes listed in R.C. 2901.01(I)(1) as offenses of violence are homicide (not including aggravated vehicular homicide), assault, menacing, kidnapping, abduction, extortion, rape, sexual battery, felonious sexual penetration, arson, disrupting public services, vandalism, robbery, burglary, inciting to violence, riot, inducing panic, domestic violence, intimidation, escape, aiding escape, carrying concealed weapons, and having weapons under disability.

In addition to these enumerated crimes, the legislature has also provided that an offense committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons is also an "offense of violence."  R.C. 2901.01(I)(3).  Under this portion of the definition, in order for the offense to be one of "violence,"

there must be knowledge, intent or scienter, which is obviously absent in the charge of vehicular homicide or aggravated vehicular homicide.

The culpable mental state of the crime of aggravated vehicular homicide is recklessness, not a higher degree of mental culpability required for crimes of violence, which, in my view, would be required to consider an individual guilty of a specification of physical harm under R.C. 2941.143.

I conclude that the legislature intended that in order for R.C. 2941.143 to be applicable, there must be an offense that had an animus separate from the enhancement criteria of harm or threat of harm. The underlying offense here, the crime of aggravated vehicular homicide, could not have been committed without causing physical harm. As noted by the appellee in his brief, the essential element of an offense of aggravated vehicular homicide is physical harm, and any additional charges based on physical harm without a change in elements or animus would therefore, as concluded by the court of appeals, be subsumed within the original charge.

There are situations under the criminal laws where the legislature has clearly manifested an intention to allow the "tacking on" of elements of an offense to enhance the punishment of offenders involved in violent offenses. Our courts have properly recognized this justifiable legislative public policy determination. Accordingly, in State v. Jenkins (1984), 15 Ohio St.3d 164, 177-178, 15 OBR 311, 322-323, 473 N.E.2d 264, 279-280, this court held the aggravated murder statute constitutional even assuming that some aggravating factors that may be "tacked on" to an indictment for aggravated murder would simply duplicate an element of the offense, since similar factors are used to elevate the offense from murder to aggravated murder. R.C. 2923.13, commonly referred to as the weapons under disability statute, prohibits certain persons, including fugitives from justice, persons convicted of any felony of violence, and persons who are drug dependent or chronic alcoholics, from acquiring, carrying or using a firearm. The violation of this section could reasonably be added to the violation of another section of criminal law; also, the firearm specification of R.C. 2929.71 may be properly added as an enhancement to the underlying crime.

Unfortunately, I must admit that R.C. 2941.143 may conceivably be interpreted as the majority has done here, but as expressed within my dissent I conclude that the General Assembly intended otherwise. In that the majority has so determined that R.C. 2941.143 does apply to aggravated vehicular homicide, I must dissent therefrom, and strongly suggest that the General Assembly needs to review the public policy issues within this section of law as interpreted by this majority.

H. Brown, J., concurs in the foregoing dissenting opinion.

FOOTNOTE:

5 Paragraph (1) sets forth the following list of violent offenses, which does not include aggravated vehicular homicide:

"A violation of sections 2903.01, 2903.02, 2903.03, 2903.04, 2903.11, 2903.12, 2903.13, 2903.21, 2903.22, 2905.01, 2905.02, 2905.11, 2907.02, 2907.03, 2907.12, 2909.02, 2909.03, 2909.04, 2909.05, 2911.01, 2911.02, 2911.11, 2911.12, 2917.01,

2917.02, 2917.03, 2917.31, 2919.25, 2921.03, 2921.34, 2921.35, 2923.12, and 2923.13 of the Revised Code[.]"