[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Justin Price appeals from his conviction in the Champaign County Common Pleas Court of improperly discharging a firearm into a place of habitation in violation of R.C. 2923.161. The jury also found the appellant guilty of two firearm specification, to wit, that he had a firearm on or about his person at the time of the offense in violation of R.C. 2941.145 and that he discharged a firearm from a motor vehicle in violation of R.C. 2941.146. The appellant was also convicted of felonious assault along with a firearm specification pursuant to R.C. 2941.145 and criminal mischief.
The trial court sentenced the defendant to a term of five years on the improper discharge of a firearm conviction plus consecutive five and three years sentences on the two firearm specifications for a total of thirteen years. The trial court did not impose sentences on the other convictions as the court found they were allied offenses of a similar import under R.C. 2941.25.
On December 7, 1996 Justice Price, Nathan Heiberger, Tommy Rutter and Jeff Murray were all at Price's mother's residence in Urbana. Murray had some marijuana which he wanted to sell and Heiberger indicated that he could sell the marijuana to a Sean Kitchen at Gwynne Village Apartments in Urbana. Heiberger, Murray and Rutter drove to Gwynne Village and Heiberger got out while the other two waited in the vehicle. Heiberger never returned and "ripped off" the marijuana which was worth $80-$100. Agitated, Murray and Rutter returned to Price's residence and the three planned to scare Heiberger by shooting at his residence in a drive-by shooting. According to Murray the drive-by shooting was Price's idea and both Murray and Rutter testified that Price fired the gun 5 or 6 times. The bullets hit a car owned by Harold Jenkins and the home of Philip Kitchen, where Heiberger was staying.
Confidential information led the police to investigate the defendant and his co-defendants. Upon questioning, Rutter admitted all three were involved in the shooting at first implicating Murray but then Price as the shooter. Murray was questioned and also implicated all 3 and said Price was the shooter. Price was given his Miranda warnings by Patrolman David Reese and originally denied involvement. Reese testified that Price asked about a barium test and then admitted to Reese that he was involved in the crime and that he was the trigger man.
Urbana Police Department Officer Reese, who is trained in the Reed technique of interrogation, advised Price that the weapon would be checked for fingerprints, that there could be a barium test to determine if he had fired a weapon, and that it was possible he would be charged with attempted murder.
The defendant, his girlfriend, his mother, and a friend all testified the defendant was at his mother's home at the time of the shooting. The defendant admitted he gave a written statement acknowledging involvement in the shooting. He said he did so because he was afraid he was going to be charged with attempted murder. He said Officer Reese suggested that the original charge could be changed to attempted murder. (Tr. 558). The defendant stated he had handled the gun used in the shooting while visiting Murray's house sometime well before the shooting and was concerned his fingerprints might still be on the gun.
In his first assignment of error, appellant contends the trial court erred in refusing to provide the jury with testimony of witnesses when the jury requested it.
During jury deliberations, the jury delivered the following question to the court:
 Can we obtain the following testimony: Officer Todd Pratt and Officer Reese's testimony concerning the taking of second set of picture taking and fingerprinting of Justice Price, testimony of Justin Price about learning about hearing scanner after Jeff Murray and Tom Rutter returned to Justin's house after shooting.
In the presence of the defendant and counsel, the trial court proposed to answer the questions with the following answer: In a trial of this length, the jury is required to rely on its collective memory about the testimony. Both the prosecution and defense counsel accepted the trial court's response. (Tr. 683, 684).
The defendant argues that the trial court abused its discretion by unreasonably denying the jury a restatement of these specific narrow portions of the trial testimony. He argues the time or inconvenience of reading the witness' testimony would have been minimal. The State on the other hand points out that the jury was only three days long and it was reasonable to require the jury to rely on their collective memory.
Objections not properly raised in the trial court are waived, and this includes constitutional issues not presented to the trial court. Substantial errors affecting the defendant's rights may however be considered "plain error" and raised for the first time on appeal. Crim.R. 52(B); State v. Biros (1997), 78 Ohio St.3d 426, cert. den. ___ U.S. ___, 118 S.Ct. 574.
Plain error is an obvious error affecting the substantial rights of the accused, and which if allowed to stand, would have a substantial adverse on the integrity and public confidence of the proceedings. State v. Craft (1977), 52 Ohio App.2d 1
In State v. Berry (1991), 25 Ohio St.3d 255, the Ohio Supreme Court held that after jurors retire to deliberate, upon request from the jury, a court in the exercise of sound discretion may cause to be read all or part of the testimony of any witness, in the presence of or after reasonable notice to the parties or their counsel.
 R.C. 2315.06 specifically provides that should a jury disagree on the testimony, "in the presence of or after notice to the parties or their counsel, the court may state its recollection of the testimony upon a disputed point." Although it is a well settled rule in most jurisdictions that a court may, in its sound discretion, read part of the testimony taken at trial to a jury which is in deliberation (see, generally, 50 A.L.R. 2d 176, 180, 192), this court has not heretofore passed on this question. We hold that after jurors retire to deliberate, upon request from the jury a court may, in the exercise of sound discretion, cause to be read all or a part of the testimony of any witness, in the presence of or after reasonable notice to the parties or their counsel. Our reading of the record reveals no abuse of discretion in allowing the testimony to be read to the jury. See, also, Itskin v. State (1935), 51 Ohio App. 211; State v. Jessop (1952), 71 Ohio Law Abs. 429.
In State v. Davis (1991), 62 Ohio St.3d 326, 339, the Ohio Supreme Court held in a capital case that there was no abuse of discretion in the trial court's refusal to read a witness' testimony to the jury upon their request during the deliberation phase of the trial.
The supreme court in Berry failed to provide trial courts with guidance on how to exercise their discretion in ordering that trial testimony be read upon a jury's request.
In determining whether the trial court has abused its discretion, the trial court should consider whether the jury trial has been a long one and whether the request is for a large amount of testimony to be read by the court reporter. The court should also consider whether the jury has been permitted to take notes during the trial. It should be remembered that jurors are often the only participants in the trial not taking notes of the testimony although their recollection of the testimony is critical in arriving at a fair verdict.
Some trial judges refuse to reread requested testimony because the party objecting contends it would emphasize that testimony over other trial testimony. This justification for refusing the juror's request defies common sense. Not all trial testimony is equally important. The jury may be in disagreement over the contents of a vital witness' testimony and for which a reading would provide the answer. Finally, the trial court should remember that the small inconvenience of reading testimony is a small price to pay for a just verdict, particularly in a criminal case.
We cannot say the trial court's refusal in this case amounted to "plain error." The first assignment of error is overruled.
In his second assignment of error, the appellant contends the trial court erred in sentencing him to two consecutive gun specifications.
The appellant argues that the trial court erred in sentencing him to two consecutive five year and three year sentences because the jury found him guilty of a specification under R.C. 2941.145
and found him guilty of a specification under R.C. 2941.146.
He contends that the more serious specification of discharging the firearm from a motor vehicle, by its nature, is inclusive of the less severe specification concerning the possessing, displaying, brandishing, or using of a firearm to facilitate the principal offense. He argues that he necessarily had to possess, display, brandish, and use it to discharge it from a motor vehicle. In effect, he argues the lesser specification "merges" into the more serious specification for sentencing purposes.
In support of the trial court's sentence, the State cites the case of State v. Witwer (1992), 64 Ohio St.3d 421. In that case the Ohio Supreme Court held a court of common pleas may impose the indefinite term of incarceration prescribed by R.C. 2929.11(B)(7) where an accused has been convicted of a fourth degree felony the commission of which caused physical harm to any person, provided the indictment which initiated the criminal proceeding contains the specification contained in R.C. 2941.143 and the accused was convicted thereon.
The Witwer case is inapposite to the facts before us. InWitwer the Supreme Court merely held that a defendant could receive an indefinite sentence for a fourth degree felony provided the indictment contained a cause harm specification. No separate penalty was imposed for the specification.
The State further argues that the legislature could have set a simple 8 years specification for discharging a firearm into a habitation. Instead the State argues the legislature made the R.C.2941.146 specification 5 years knowing the sentence for that specification would always be consecutive to a three year sentence for brandishing a firearm.
In providing punishments for violations of R.C. 2941.145 and R.C. 2941.146 the legislature was presumably mindful of the restrictions regarding allied offenses of a similar import. R.C.2941.25(A) generally bars the state from obtaining convictions for allied "offenses" of similar import. Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment may contain counts for all such offenses, but the defendant may be convicted of only one.
If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import. If the court finds either that the crimes were committed separately or there was a separate animus for each crime, the defendant may be convicted of both offenses. Newark v. Vazirani (1990), 48 Ohio St.3d 81.
Although R.C. 2941.25(A) does not specifically apply to separate specifications as opposed to separate offenses, it seems unlikely that the legislature intended a different result as it applies to specifications which include elements which correspond to such a degree that commission of one specification will result in the commission of another and no separate animus exists for committing each specification. For example, the legislature specifically provides that if felonies are committed as part of the same act or transaction, only one three year term of incarceration shall be imposed. R.C. 2929.71(B).
Here the defendant was engaged in a single criminal act of firing a weapon at a house. By discharging his firearm from a motor vehicle in violation of R.C. 2941.146 he at once also had a firearm on his person, displayed it, brandished it and used it to facilitate the offense all in violation of R.C. 2941.145. In short, the more serious specification necessarily proved the lesser specification. We agree with the appellant that the legislature did not intend that he be sentenced for violating both these specifications under these circumstances. The second assignment of error is sustained.
In his third assignment, appellant contends his trial counsel was constitutionally ineffective when he failed to file a pre-trial motion to suppress his confession to Officer Reese on the basis that his confession was involuntary.
The defendant argues his confession was involuntary because Officer Reese told him he could be charged with attempted murder, that a barium test could identify who used the gun, and that the gun used in the shooting had fingerprints on it when it did not.
The State argues that the evidence does not demonstrate that Officer Reese misled the defendant about the results of the barium test. The State argues Reese merely testified that the defendant was given the barium test, and the defendant assumed the test would be incriminating. The State also argues that the evidence demonstrates that Officer Reese merely told the defendant the gun would be tested for fingerprints and the defendant merely assumed his fingerprints were on the gun. The State also points out that Reese merely told the defendant he could be charged with attempted murder in light of the fact that six bullets were fired into the house.
When considering whether or not a Defendant's confession is involuntarily induced, the Court is to consider the totality of the circumstances, including the age, mentality, prior criminal experience, length, intensity of interrogation, and whether there was any physical deprivation or the existence of threat or inducement. State v. Edwards (1976), 49 Ohio St.2d 31,358 N.E.2d 1051. If a Defendant presents sufficient credible evidence to show that a confession was not voluntary, and the State cannot offer rebuttal evidence, a motion to suppress must be granted.State v. Gray, 14 Ohio App.3d 43, 469 N.E.2d 1340 (1984).
Deception is a factor bearing on the voluntariness but misrepresentation alone, does not establish coercion and involuntariness. State v. Wiles (1991), 59 Ohio St.3d 71, cert. den. 506 U.S. 832, 113 S.Ct. 99. A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity impaired because of coercive police conduct. State v. Otte
(1996), 74 Ohio St.3d 555, 562, cert. den. 117 S.Ct. 109. See also, Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515.
The ultimate question of voluntariness of a confession is a question of law, and an appellate court should review the facts to make its own determination of the issue. Arizona v. Fulimante
(1991), 499 U.S. 279, 111 S.Ct. 1246. Even if we were to accept the defendant's version of the facts of his interview by Officer Reese, he has failed to show how his counsel was ineffective in failing to move to suppress his statements to Officer Reese. There is no evidence of coercive police activity that would justify suppression of his confession. Counsel was not constitutionally ineffective. His conduct was objectively reasonable. State v. Bradley (1989), 42 Ohio St.3d 136. The third assignment of error is overruled.
The defendant's three year sentence on the firearm specification in violation of R.C. 2941.145 is hereby Reversed. In all other respects the judgment of the trial court is Affirmed.
WOLFF, J., and YOUNG, J., concur.
Copies mailed to:
Nick Selvaggio
James D. Marshall
Hon. Roger Wilson
Dept. Of Corrections and Rehabilitation